1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WILLIAMSON,<br><br>              Plaintiff,<br><br>       v.<br><br>AYE, et al.,<br><br>              Defendants. | CASE NO. 1:16-cv-01147-AWI-MJS(PC)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 1)**<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff John Williamson is a state prisoner proceeding *pro se* and in *forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff's August 5, 2016 civil rights complaint is before the Court for screening. (ECF No. 1.) Plaintiff has declined Magistrate Judge jurisdiction.  (ECF No. 7.) No other parties have appeared.

**I.      Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which

1  relief may be granted, or that seek monetary relief from a defendant who is immune from
2  such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion
3  thereof, that may have been paid, the court shall dismiss the case at any time if the court
4  determines that . . . the action or appeal . . . fails to state a claim upon which relief may
5  be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

6  ## II.    Pleading Standard

7      Section 1983 "provides a cause of action for the deprivation of any rights,
8  privileges, or immunities secured by the Constitution and laws of the United States."
9  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).
10  Section 1983 is not itself a source of substantive rights, but merely provides a method for
11  vindicating federal rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94
12  (1989).

13      To state a claim under § 1983, a plaintiff must allege two essential elements: (1)
14  that a right secured by the Constitution or laws of the United States was violated and (2)
15  that the alleged violation was committed by a person acting under the color of state law.
16  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243,
17  1245 (9th Cir. 1987).

18      A complaint must contain "a short and plain statement of the claim showing that
19  the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations
20  are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported
21  by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678
22  (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set
23  forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible
24  on its face." Id. Facial plausibility demands more than the mere possibility that a
25  defendant committed misconduct and, while factual allegations are accepted as true,
26  legal conclusions are not. Id. at 677-78.

27

28

III.    **Plaintiff's Allegations**

Plaintiff's claims arose at the California State Prison in Corcoran, California ("CSP-COR"), where he remains housed.  He names as Defendants Dr. Aye and Does 1-5, nursing staff and primary care providers at the 3C-yard clinic and "ACH," the CSP-COR hospital.

Plaintiff's allegations may be summarized as follows:

On December 28, 2014, Plaintiff began to experience sweating, fatigue, and "general malaise." Custody staff sent Plaintiff to the clinic, where it was determined that Plaintiff had a temperature of 103 degrees. He was made to lie in his boxers in a cold room and given Tylenol and cold water until his temperature dropped below 100 degrees, after which Plaintiff was returned to his housing unit.

The next morning, Plaintiff began to experience the same symptoms and was sent back to the clinic. His temperature was again 103 degrees. Plaintiff was again stripped down, placed in a cold room, and given Tylenol and cold water. He also had blood drawn, which was sent to the lab. When Plaintiff's temperature dropped below 100 degrees, he was returned to his housing unit.

On December 31, 2014, Plaintiff was called in for a random drug test. Plaintiff's urine sample came out red with blood, so the attending nurse sent Plaintiff to the onsite hospital, "ACH." There, Plaintiff was seen by Defendant Dr. Aye, who administered another blood test. Dr. Aye told Plaintiff he was having an adverse reaction to drugs, possibly Ibuprofen. In an "abundance of caution," Dr. Aye transferred Plaintiff to Mercy Hospital in Bakersfield, California. Physicians at Mercy Hospital determined that Plaintiff had a life-threatening gall bladder infection and performed emergency surgery to removed Plaintiff's ruptured gall bladder.

Plaintiff remained in the hospital until February 7, 2015. Upon discharge, Plaintiff was prescribed a series of medications and was told to adhere to a special diet that was low in sodium and contained no processed foods or peanut butter.

1     When Plaintiff returned to CSP-COR, Dr. Aye told him that CSP-COR "doesn't do

2 special diets." Dr. Aye further stated that the regular prison diet was already low in

3 sodium, albeit "full of processed foods," and that Plaintiff could simply not eat any peanut

4 butter he was given.

5     Plaintiff alleges Defendant Does 1-5 merely treated Plaintiff's symptoms without

6 ever considering the possibility that Plaintiff had a life-threatening infection. Dr. Aye

7 improperly diagnosed Plaintiff with having a bad reaction to a drug, and refused to adhere

8 to Plaintiff's special diet recommendation after Plaintiff's surgery. Plaintiff alleges

9 Defendants violated the Eighth Amendment protection against cruel and unusual

10 punishment; he requests damages in the amount of $500,000.

11 **IV.    Analysis**

12     **A.    Doe Defendants**

13     The use of Doe Defendants generally is disfavored in federal court. Wakefield v.

14 Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d

15 637, 642 (9th Cir. 1980)). Plaintiff may, under certain circumstances, be given the

16 opportunity to identify unknown defendants through discovery prior to service. Id. (plaintiff

17 must be afforded an opportunity to identify unknown defendants through discovery unless

18 it is clear that discovery would not uncover their identities). However, in order to proceed

19 to discovery, Plaintiff must first state a cognizable claim. Furthermore, Plaintiff may not

20 attribute liability to a group of defendants, but must "set forth specific facts as to each

21 individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th

22 Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore,

23 Plaintiff must distinguish between Doe defendants by, for example, referring to them as

24 "John Doe 2," "John Doe 3," and so on, and describe what each did or failed to do to

25 violate Plaintiff's rights. See Ingram v. Brewer, No. 1:07-cv-00176-OWW-DLB, 2009 WL

26 89189, at *3 (E.D. Cal. Jan. 12, 2009) ("In order to state a claim for relief under section

27 1983, Plaintiff must link each named defendant with some affirmative act or omission that

28 demonstrates a violation of Plaintiff's federal rights.").

For the reasons set forth below, Plaintiff has not made any cognizable claims against Does 1-5. Those Defendants will therefore be dismissed with leave to amend.

### B.    Medical Indifference

#### 1.    Legal Standard

The Eighth Amendment of the United States Constitution entitles prisoners to medical care, and a prison official violates the Amendment when he acts with deliberate indifference to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta, 744 F.3d at 1081 (citing Jett, 439 F.3d at 1096). Examples of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

A prison official shows deliberate indifference to such a need if he "knows of and disregards an excessive risk to inmate health." Peralta, 744 F.3d at 1082 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "requires more than ordinary lack of due care." Colwell, 763 F.3d at 1066 (citing Farmer, 511 U.S. at 835).  Instead, the prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Colwell, 763 F.3d at 1066.  Prison officials may demonstrate deliberate indifference when they "deny, delay, or intentionally interfere with medical treatment," and prison doctors can be deliberately indifferent in their provision of care. Id.

With regards to course of treatment, a prison official demonstrates deliberate indifference where he or she knows that a course of treatment is ineffective but continues it anyway or delays necessary treatment without justification. See Jett, 439 F.3d at 1097-

5

1098; Estate of Prasad ex rel. Prasad v. Cty. of Sutter, 958 F.Supp.2d 1101, 1112-1113 (E.D. Cal. 2013).  Purposefulness may be inferred where a prison official is aware of the extent of the inmate's pain but declines to do anything to improve the inmate's situation. See Jett, 439 F. 3d at 1098.  An inmate's harm need not be substantial, Id., at 1096 (citing McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992)), and even brief periods of unnecessary pain may be unconstitutional.  See Clement v. Gomez, 298 F.3d 898, 904-905 (9th Cir. 2002).

Negligence, inadvertence, or differences of medical opinion between the prisoner and health care providers, however, do not violate the Eighth Amendment. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Lyons v. Busi, 566 F.Supp.2d 1172, 1191-1192 (E.D. Cal. 2008); see also Colwell, 763 F.3d at 1068 (distinguishing plaintiff's long-uncorrected cataracts from "a case of ordinary medical mistake or negligence" and finding defendants deliberately indifferent).  Even a showing of medical malpractice or gross negligence is insufficient to establish a constitutional violation.  Simmons v. Navajo Cty., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  Rather, "the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012) (overruled on other grounds by Peralta, 744 F.3d at 1083) (quoting Jackson, 90 F.3d at 332).

Finally, for an inmate's complaints about his diet to rise to the level of a constitutional deprivation, he must show that the food he received was not adequate to maintain his health, e.g., by alleging facts indicating he lost weight or incurred health problems. See Foster v. Runnels, 554 F.3d 807, 813 n. 2 (9th Cir. 2009); LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993); Stewart v. Block, 938 F. Supp. 582, 588 (C.D. Cal. 1996).  In addition, the inmate must show that the responsible prison officials

1  had a "sufficiently culpable state of mind," and were deliberately indifferent to the
2  inmate's health and safety.  Farmer, 511 U.S. at 834.

3                  **2.    Analysis**

4      Plaintiff has alleged a serious medical need: a gall bladder infection that required
5  emergency surgery and caused Plaintiff to be hospitalized for over one month.

6      However, Plaintiff has not shown how any Defendant was deliberately indifferent
7  to his need. Firstly, as to Dr. Aye: Dr. Aye did not examine Plaintiff until December 31,
8  2014, when Plaintiff's urine sample prompted a clinic nurse to send Plaintiff to the
9  institution's hospital. While Dr. Aye believed Plaintiff was having a bad reaction to a
10  medication, "in an abundance of caution" he decided to send Plaintiff to Mercy Hospital,
11  presumably that same day. On these facts, Dr. Aye was far from indifferent to Plaintiff's
12  medical needs—he made the affirmative decision, correctly it appears, to send Plaintiff to
13  the emergency room "just in case." Misdiagnosis, even if a result of negligence or
14  medical malpractice, does not establish a constitutional claim, particularly where Dr.
15  Aye's precautionary measures led Plaintiff to receive the correct diagnosis. See
16  Simmons, 609 F.3d at 1019. Even assuming negligence was a factor in the misdiagnosis,
17  mere "negligence, inadvertence, or difference[] of medical opinion" do not rise to the level
18  of an Eighth Amendment violation.  Jackson, 90 F.3d at 332.

19      Further, Plaintiff has pled insufficient facts to demonstrate that Dr. Aye was
20  deliberately indifferent to Plaintiff's serious medical needs when he "denied" Plaintiff's
21  special diet. Notwithstanding the fact that Dr. Aye claimed CSP-COR did not "do special
22  diets," he told Plaintiff that the regular prison diet was already low in sodium, and advised
23  Plaintiff not to eat peanut butter. These provisions appear to adhere to the Mercy Hospital
24  physicians' orders. As to the fact that the prison diet was "full of processed foods,"
25  Plaintiff does not allege that he was only given processed foods or that he sustained
26  adverse consequences to his health because of the diet he received.  Plaintiff's medical
27  indifference claims against Dr. Aye will be dismissed with leave to amend.

28

1   Finally, Plaintiff's allegations are insufficient to show that Does 1-5 were

2   deliberately indifferent to Plaintiff's medical needs. On two occasions, the clinic staff

3   successfully treated the symptoms Plaintiff presented. When the symptoms persisted, the

4   nursing staff made the reasoned and appropriate decision to refer Plaintiff to Dr. Aye. The

5   mere fact that the clinic staff failed to realize that Plaintiff had a gall bladder infection

6   does not rise to the level of a constitutional violation when it is clear that staff members

7   took steps to treat Plaintiff and then refer Plaintiff to a doctor when his condition became

8   more serious. Plaintiff's claims against Does 1-5 will be dismissed with leave to amend.

9   **C.    State Law Claim**

10   Plaintiff accuses Defendants of "gross negligence."  Negligence is a state law tort.

11   While Plaintiff does not explicitly plead a violation of state law, he does allege that he

12   submitted this claim to the Government Tort Claims Board. Therefore, the Court will

13   assume Plaintiff intends to make a state tort claim for negligence.

14   As an initial matter, the Court will not exercise supplemental jurisdiction over any

15   state law claim absent a cognizable federal claim. 28 U.S.C. § 1367(c)(3); Herman

16   Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001); Brown v.

17   Lucky Stores, Inc., 246 F.3d 1182, 1189 (9th Cir. 2001).  Where a "court dismisses the

18   federal claim leaving only state claims for resolution, the court should decline jurisdiction

19   over the state claims and dismiss them without prejudice." Les Shockley Racing v.

20   National Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989). Here, Plaintiff has failed to

21   state a cognizable federal claim against any Defendant, so the Court declines to exercise

22   jurisdiction over any state claims.

23   Additionally, before the Court could potentially consider the validity of Plaintiff's

24   state claims against any Defendants, Plaintiff must allege compliance with the California

25   Tort Claims Act.  The Act requires would-be tort plaintiffs to present their claims against

26   public entities to the California Victim Compensation and Government Claims Board, no

27   more than six months after the cause of action accrues.  Cal. Govt. Code § 905.2, 910,

28   911.2, 945.4, 950-950.2.  Presentation of a written claim, and action on or rejection of the

1  claim, are prerequisites to filing suit.  Castaneda v. CDCR, 212 Cal. App. 4th 1051, 1061

2  (Cal. Ct. App. 2013); Easter v. CDC, 694 F.Supp.2d 1177, 1185-1186 (S.D. Cal. 2010).

3  Here, Plaintiff has alleged compliance with the Act.  Should Plaintiff believe he can make

4  a cognizable federal claim, the standard for negligence is discussed:

5        A public employee is liable for injury to a prisoner "proximately caused by his

6  negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d).  Under California law,

7  "'[t]he elements of negligence are: (1) defendant's obligation to conform to a certain

8  standard of conduct for the protection of others against unreasonable risks (duty); (2)

9  failure to conform to that standard (breach of duty); (3) a reasonably close connection

10  between the defendant's conduct and resulting injuries (proximate cause); and (4) actual

11  loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry

12  v. Sax, 158 Cal. App. 4th 983, 994 (2008)).

13        In a negligence action the plaintiff must show the defendant's act or omission

14  (breach of duty) was a cause of the plaintiff's injury. Jackson v. Ryder Truck Rental, Inc.,

15  16 Cal. App. 4th 1830, 1846 (1993).  The element of causation generally consists of two

16  components. Id. at 1847. The plaintiff must show (1) the defendant's act or omission was

17  a cause in fact of the plaintiff's injury, and (2) the defendant should be held responsible

18  for negligently causing the plaintiff's injury. Id. The second component is a normative or

19  evaluative one that asks whether the defendant should owe the plaintiff a legal duty of

20  reasonable care under the circumstances of the case.

21        At present, Plaintiff has not alleged negligence. There is no indication that any

22  Defendant failed to conform to an appropriate standard of conduct in treating Plaintiff, or

23  that Defendants' actions or omissions were the proximate cause of Plaintiff's injuries.

24  Plaintiff will be given an opportunity to amend this claim.

25  **V.    Conclusion**

26        Plaintiff's complaint fails to state a cognizable claim.   He will be granted leave to

27  amend if he believes, in good faith, he can cure the identified deficiencies. Akhtar v.

28  Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Noll v. Carlson, 809 F.2d 1446, 1448-49

1  (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding

2  new, unrelated claims.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

3       If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but

4  under section 1983, it must state what each named Defendant did that led to the

5  deprivation of Plaintiff's constitutional rights and liability may not be imposed on

6  supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77;

7  Starr, 652 F.3d at 1205-07.  Although accepted as true, the "[f]actual allegations must be

8  [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at

9  555 (citations omitted).

10      Finally, an amended complaint supersedes the original complaint, Lacey v.

11  Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be

12  "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

13      Accordingly, it is HEREBY ORDERED that:

14         1.  Plaintiff's complaint is DISMISSED with leave to amend.

15         2.  The Clerk's Office shall send Plaintiff a blank complaint form along with a

16             copy of the complaint filed August 5, 2016;

17         3.  Within **thirty (30) days** from the date of service of this order, Plaintiff must

18             file an amended complaint curing the deficiencies identified by the Court in

19             this order or file a notice of voluntary dismissal; and

20         4.  If Plaintiff fails to comply with this order, the Court will recommend this

21             action be dismissed, without prejudice, for failure to state a claim and failure

22             to obey a court order, subject to the "three strikes" provision set forth in 28

23             U.S.C. § 1915(g).

24

25  IT IS SO ORDERED.

26  Dated:   November 7, 2016          /s/ *Michael J. Seng*

27                                      UNITED STATES MAGISTRATE JUDGE

28