UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WILLIAMSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AYE, et al.,<br><br>　　　　Defendants. | CASE NO. 1:16-cv-01147-AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS SUIT FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF No. 10)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

　　　　Plaintiff John Williamson is a state prisoner proceeding *pro se* and in *forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has declined Magistrate Judge jurisdiction. (ECF No. 7.) No other parties have appeared.

　　　　On November 8, 2016, the Court screened Plaintiff's civil rights complaint and found it stated no cognizable claims. (ECF No. 9.) Plaintiff was granted thirty days to file an amended complaint. His December 9, 2016 first amended complaint is now before the Court.

**I.　　Screening Requirement**

　　　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

§ 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.     Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III.     Plaintiff's Allegations

Plaintiff's claims arose at the California State Prison in Corcoran, California ("CSP-COR"), where he remains housed. He names as Defendants Dr. Aye; Sergeant Morrison; and Does 1-5, nursing staff and primary care providers at the 3C-yard clinic and "ACH," the CSP-COR hospital.

Plaintiff's allegations may be summarized as follows:

On December 28, 2014, at approximately 6:00 pm, custody staff sent Plaintiff to the medical clinic because of his sweating, apparent fever, and "general malaise." There, it was determined that Plaintiff had a temperature of 103 degrees, what Plaintiff deems a "sure sign of infection." He was left in his boxers in a cold room and given Tylenol and cold water until his temperature dropped below 100 degrees. This took several hours. Once Plaintiff was better, Sergeant Morrison directed Plaintiff to return to his cell, stating he was "just slammin' crap again," meaning using intravenous drugs. Plaintiff protested that he had not used any intravenous drugs recently, but was ignored.

The next morning, before 8:30 am, Plaintiff began to experience the same symptoms and was sent back to the clinic by different custody staff. His temperature was again 103 degrees. Plaintiff was again stripped down, placed in a cold room, and given Tylenol and cold water. He also had blood drawn, which was sent to the lab. Plaintiff believes that a blood test would have shown that there were no drugs in his system, that Plaintiff had a severe infection, and that more aggressive treatments were required. When Plaintiff's temperature dropped below 100 degrees, he was returned to his housing unit. By taking Tylenol and drinking water, Plaintiff was able to keep his temperature under control the next day.

On December 31, 2014, Sergeant Morrison called Plaintiff in for a random drug test. Plaintiff's urine sample came out red with blood, so the attending nurse sent Plaintiff to the ACH onsite hospital. There, Plaintiff was seen by Defendant Dr. Aye, who ordered another blood test. Dr. Aye told Plaintiff he was having an adverse reaction to drugs, possibly Ibuprofen. In an "abundance of caution," Dr. Aye transferred Plaintiff to Mercy

1  Hospital in Bakersfield, California. Physicians at Mercy Hospital ordered blood tests. The
2  tests came back negative for drugs, but with a severely elevated white blood cell count. A
3  doctor determined that Plaintiff had a life-threatening gall bladder infection, which was
4  confirmed through emergency surgery. Plaintiff's gall bladder had ruptured due to an
5  untreated infection.

6  Plaintiff remained in the hospital until February 7, 2015. Upon discharge, Plaintiff
7  was prescribed a series of medications and was told to adhere to a special diet that was
8  low in sodium and contained no processed foods or peanut butter, which is difficult to
9  digest without a gall bladder.

10  When Plaintiff returned to CSP-COR, Dr. Aye told him that CSP-COR "doesn't do
11  special diets" and that Plaintiff could simply not eat any peanut butter he was given. With
12  the exception of the baked chicken quarter, all of the foods served at CSP-COR are
13  processed.

14  Plaintiff alleges Defendant Does 1-5 ignored the obvious signs of infection, waited
15  one day before taking a blood sample, and once they had the sample simply ignored it
16  and instead assumed Plaintiff was on drugs. Dr. Aye, also assuming Plaintiff was on
17  drugs, improperly diagnosed him with having a bad reaction and delayed Plaintiff's
18  treatment for "four days." He also refused to adhere to Plaintiff's special diet
19  recommendation after Plaintiff's surgery. Sergeant Morrison was dismissive of Plaintiff's
20  claims that he was not on drugs, and improperly sent Plaintiff back to his cell rather than
21  move him to the onsite hospital after the first day of fever.

22  Plaintiff alleges Defendants violated the Eighth Amendment protection against
23  cruel and unusual punishment when they denied him appropriate medical treatment; he
24  requests damages in the amount of $500,000.

25  **IV.   Analysis**
26      **A.   Doe Defendants**
27  In its prior screening order, the Court advised Plaintiff of the requirements for
28  stating a claim against Doe Defendants. (See ECF No. 9 at 4.) The Court will not repeat

4

itself here. For the reasons set forth below, the Court finds Plaintiff still has not made any cognizable claims against Does 1-5.

### B. Medical Indifference

The Court advised Plaintiff of the appropriate legal standards for a claim of medical indifference in its prior screening order. (See ECF No. 9 at 5-7.) It need not repeat those here. Plaintiff still has not shown how any Defendant was deliberately indifferent to his serious medical needs.

Firstly, as to Dr. Aye: Dr. Aye did not examine Plaintiff until December 31, 2014, when Plaintiff's urine sample prompted a clinic nurse to send Plaintiff to the institution's hospital. There is no evidence that Dr. Aye was even aware of Plaintiff's illness prior to that date, therefore it cannot be said that he delayed Plaintiff's treatment for "four days." Furthermore, while Dr. Aye initially believed Plaintiff was experiencing a bad reaction to a drug, he still sent Plaintiff to Mercy Hospital "in an abundance of caution" the very same day. Misdiagnosis, even if the result of negligence or medical malpractice, does not establish a constitutional claim, particularly where a defendant's precautionary measures led Plaintiff to receive the correct diagnosis and appropriate treatment. See Simmons v. Navajo Cty., 609 F.3d 1011 1019 (9th Cir. 2010); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff also has pled insufficient facts to demonstrate that Dr. Aye was deliberately indifferent to Plaintiff's serious medical needs when he denied Plaintiff a special diet. As Plaintiff was previously advised, an inmate's complaints about his diet will only rise to the level of a constitutional claim if there is an allegation that the inmate suffered some adverse health consequence as a result of the diet he received, such as weight loss or illness, and the defendant's actions demonstrated deliberate indifference. See Foster v. Runnels, 554 F.3d 807, 813 n. 2 (9th Cir. 2009); LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993); Stewart v. Block, 938 F. Supp. 582, 588 (C.D. Cal. 1996); Farmer v. Brennan, 511 U.S. 825, 834 (1994). Here, there are no facts showing that Plaintiff was harmed or at risk of harm because he did not have a special diet.

Plaintiff also has not shown that Does 1-5 were deliberately indifferent to Plaintiff's medical needs. On two occasions, the clinic staff successfully treated the symptoms Plaintiff presented. On the third occasion, when Plaintiff presented more serious symptoms (blood in his urine), the nursing staff made the reasoned and appropriate decision to refer Plaintiff to Dr. Aye. The mere fact that the clinic staff neglected to recognize Plaintiff's gall bladder infection does not rise to the level of a constitutional violation when it is clear that staff members took steps to treat Plaintiff and then refer Plaintiff to a doctor when his condition became more serious. While Plaintiff may be correct that a blood test could have detected his infection sooner, negligence, even gross negligence, is insufficient to establish deliberate indifference. Simmons, 609 F.3d at 1019.

Finally, Plaintiff fails to show how Sergeant Morrison was deliberately indifferent to Plaintiff's medical needs. Plaintiff correctly points out that Morrison is not a medical professional and lacks the authority to make medical determinations. It appears, then, that Morrison simply directed Plaintiff to return to his cell when medical staff deemed him well enough. Morrison's off-hand comment that Plaintiff was "just slammin' crap again" does not suggest that Morrison knew or should have known that Plaintiff had more serious medical needs and required further treatment.

Plaintiff presumes Defendants failed to diagnose his gall bladder infection because they believed he was using drugs. However, even assuming Plaintiff is correct that Defendants believed Plaintiff was using drugs, their responses to the symptoms he initially presented (fever and fatigue) appear appropriate in light of the information available to them at the time. Plaintiff has presented no facts to indicate that Defendants knew or should have known that he had a gall bladder infection at the time they treated him.

Plaintiff's Eighth Amendment medical indifference claims against all Defendants should be dismissed. Further leave to amend would be futile and should be denied.

**V.      Conclusion**

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's first amended complaint be DISMISSED, with prejudice, for failure to state a claim; and
2. Dismissal count as a strike under the "three strikes" provision of 28 U.S.C. § 1915(g).

The findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with the findings and recommendation, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   January 29, 2017                    /s/ *Michael J. Seng*
                                             UNITED STATES MAGISTRATE JUDGE

7